(89 Misc. Rep. 234)

### GRASSI BROS., Inc., v. O'ROURKE et al.

(Supreme Court, Special Term, New York County, February, 1915.)

1. ASSOCIATIONS ⬥5—DISCIPLINARY MEASURES—REVIEW BY COURTS.

The relations of a member of an unincorporated society to it are fixed by the contract as expressed by the constitution and by-laws, with the operation of which, when applied as disciplinary measures, a court of equity will not interfere, provided they are applied justly and fairly.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 4–6; Dec. Dig. ⬥5.]

2. ASSOCIATIONS ⬥10—MEMBERSHIP—EXPULSION—PROCEDURE.

The interest acquired by membership in an unincorporated society formed to foster, protect, and promote the welfare of its members, being one of substance and value, could not be taken away from a member, except by proceedings according to the constitution and by-laws of the society.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 10–12; Dec. Dig. ⬥ 10.]

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. ASSOCIATIONS ⬅️10—CHARGES AGAINST MEMBER—NOTICE—IMPLIED REQUIREMENT.

Where the constitution of a voluntary unincorporated association provides that "the executive committee shall act as a * * * trial committee and shall decide * * * all charges," but there is no provision requiring notice of the preferring of charges, which must be in writing and signed, to be served on the accused member, the law will insert such a provision.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 10–12; Dec. Dig. ⬅️10.]

4. ASSOCIATIONS ⬅️10—EXPULSION OF MEMBER—VALIDITY.

A company, having membership in an employing plasterers' association, was cited by letter from the secretary to appear before the association's executive committee, and, when its representative appeared, he was informed that there was a charge against it in the trade board. The representative asked to be informed of the charge and requested a trial. No charges were read or exhibited to him, nor were any witnesses examined or minutes of the meeting kept; but the board found the company guilty of violating a trade agreement and recommended its expulsion. Thereafter a special meeting of the association was held, at which the company was present, and, without any charges being preferred or witnesses examined, after plaintiff had been excluded from the meeting, a vote was taken and its expulsion pronounced. *Held* that, since such proceedings were violative of the constitution of the association and the law of the land, which required a fair trial on charges made, such expulsion was void.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 10–12; Dec. Dig. ⬅️10.]

5. DAMAGES ⬅️201—REFERENCE FOR ASSESSMENT—INTERLOCUTORY DECREE.

Where the trial in an action for the restoration of plaintiff as a member of an unincorporated association is conducted on the express understanding that the testimony relating to damages sustained because of plaintiff's expulsion shall be withheld for reference, provision should be made for such reference in an interlocutory decree granting plaintiff relief.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 522; Dec. Dig. ⬅️201.]

Action by Grassi Bros., Incorporated, against Tierney O'Rourke, as President of the Employing Plasterers' Association of New York City, an unincorporated association, etc., and others. Decision for plaintiff.

Charles G. F. Wahle, of New York City, for plaintiff.
Eidlitz & Hulse, of New York City, for defendant O'Rourke.
Anna Moscowitz, of New York City, for defendants Crowe and Rabey.

GOFF, J. In its corporate capacity plaintiff held membership in the Employing Plasterers' Association, a voluntary association composed of firms and corporations engaged as employers in the plastering trade. By its constitution its object is stated to be "to foster, protect, and promote the welfare and interest of its members," and it is provided that membership shall be held as personal property by either person, firm, or corporation. The institution fee is fixed at $100, annual dues at $80, and there is a schedule of fines for non-

attendance at meetings. It is apparent that membership in the association is regarded as a substantial property interest. From the association plaintiff was expelled, and it institutes this action for restoration on the ground that its expulsion was, according to the constitution, illegal.

[1] The relations of a member of an unincorporated society to the society are fixed by the contract of the parties, as expressed in the constitution and by-laws. With their operation when applied as disciplinary measures a court of equity will not interfere, provided they are applied justly and fairly. If they are so applied, further inquiry will not be made. By his voluntary act the member assumes obligations and submits to liabilities; and if, after due observance of his rights, unsatisfactory results follow, he will not be heard in complaint of the tribunal which he has selected. This is the essence of all judicial authority that has pronounced upon the subject. Cohen v. Thomas, 209 N. Y. 407, 103 N. E. 708, and cases cited. Because of its appositeness, and being the latest authoritative utterance, quotation is made from People ex rel. Holmstrom v. Independent Dock Builders' Union, 164 App. Div. 267, 149 N. Y. Supp. 771:

"The well-established rule governing interference by the courts with the internal affairs of voluntary associations and membership corporations in regard to their disciplinary proceedings is that the court will look into the record to see whether the practice and proceeding has [have] been in accordance with the constitution and by-laws of the organization, whether the charges are substantial, and whether the member has had fair notice and opportunity to be heard. In short, has the member received fair play? If so, the court will not substitute its judgment for that of the organization."

[2-4] The interest which plaintiff acquired by its membership was not merely of a sentimental or social nature. It was of substance and value in its business aspect, and it cannot be deprived of it, except by proceedings in accordance with the law of its membership. Matter of Hellman, 174 N. Y. 254, 66 N. E. 809, 95 Am. St. Rep. 582; Weidenfeld v. Keppler, 84 App. Div. 235, 82 N. Y. Supp. 634. Article V, section 5, of the constitution provides that:

"The executive committee shall act as a * * * trial committee and shall decide * * * all charges involving irregularities, such as violations of contracts, etc.; but their finding shall be subject to appeal to the association for final action. It shall be the duty of the committee to hear all charges and to make a careful investigation of same before taking action thereon, and to accord a fair hearing before the committee."

Section 6 reads:

"All charges must be preferred in writing over the signature of the person or persons making the charge," etc.

Reduced to essentials, these provisions require (a) that charges must be in writing over the signature of the person making the charge; (b) that the committee shall hear all the charges; and (c) that the accused shall have a fair hearing, which means that he shall have a fair trial. There is no provision requiring notice of the preferring of charges to be served on an accused member; but there should be, and, since there is not, the law will insert such provision,

because it would be repugnant to a sense of justice that an accused should be haled before a trial committee without being apprised of the cause.   People ex rel. Johnson v. New York Produce Exchange, 149 N. Y. 401, 44 N. E. 84;  Loubat v. Le Roy, 40 Hun, 546;  Fritz v. Muck, 62 How. Prac. 69;  Williamson v. Randolph, 48 Misc. Rep. 96, 96 N. Y. Supp. 644.

On the 19th of September, 1913, plaintiff received from the secretary of the association this letter:

"Gentlemen—You are hereby cited to appear before the executive committee of the Employing Plasterers' Association on Monday, September 22, '13, at 3 o'clock, No. 30 West Thirty-Third street."

It would be idle to discuss the inutility of this letter as a notice of charges having been preferred.   It is indefinite as to purpose and inoperative as to conveying intelligence.   Were such a communication construed as an effective notice to answer charges, it would open opportunity to mask purposes and entrap a member into apparent assent to a procedure illegal at its inception.   Neither at the time when the citation was sent nor for three days thereafter was there anything bearing even the semblance of charges in the hands of the executive committee.   When the representative of plaintiff appeared before the committee he was told by the chairman:  "There is a charge against you in the trade board."   He replied in substance: "What is the charge?  I want a trial."   There were no charges read or exhibited to him, nor were there any witnesses examined.   Minutes of the meeting were not kept, but there is substantial unanimity in the testimony that the executive committee found plaintiff guilty on the finding of the "trade board" of having violated a trade agreement, and recommended expulsion from the association.   A special meeting of the association was held, at which plaintiff was present. Charges were not preferred nor witnesses examined.   Plaintiff was excluded (which was a wrong), a vote was taken, and expulsion pronounced.   From the initial step, when plaintiff was "cited" to appear before the executive committee, to the culminating vote for expulsion, the association ignored its own laws and thereby deprived plaintiff of its right.   The course taken was not marked by irregularities which might be waived by appearance and participation, but it was fundamentally invalid, in that, there being no charges, there could be no trial, and consequently there could be no verdict of guilty and sentence of expulsion.

It is contended, however, that by an agreement between the employers' association and the workmen's associations, called "locals," there was instituted a "trade board," upon which was conferred power to hear and try charges and report its findings to the executive committee.   The value of this contention must be tested by the measure of authority given to the "trade board" by the employers' association, and that measure must be sought in the constitution and bylaws.   If there be such authority, the plaintiff is bound by it;  but, if there be no such authority, an agreement between two bodies cannot subvert the laws of one under which membership has been ac-

quired. The only mention of the "trade board" in the constitution is found in article V, section 8:

"It shall be the duty of the trade board, in conjunction with a like number from the journeymen's association, to act as a board of arbitration. They shall investigate all charges and disputes which may arise between the employer and his employés. The findings and decisions of this trade board shall be final and binding on both sides to the dispute."

The purpose as well as the letter of this provision is to create a board of arbitration to settle disputes between employer and employé in matters arising from their trade relations. Linking the word "charges" with "disputes" does not alter the sense, nor does it convert a "board of arbitration" into a trial committee. At most it is superfluous, merely a variant of "disputes" and embraced in their settlement, which is the object of attainment. In this provision there is no authority conferred upon the board of arbitration to hear charges and make a finding thereon against a member of the association.

But it is urged that the agreement between the employers' association and the "locals" gives the board power to act as a trial committee. Even so, such an agreemnt would be inoperative to amend or abrogate the provisions of the constitution. Article VI specifies the requirements to be observed in amending the constitution, and there is no evidence that an amendment was made of the provisions·quoted. For convenience of expression the agreement alluded to may be termed a working agreement between the employers and their workmen, purporting to regulate rates of wages, hours of work, and other matters relating to the plasterers' trade. It is an elaborate scheme for the conduct of business between the employers and the unions. Provision is made for an arbitration board, with "full power to act," in all violations of the agreement. Article VI, § 21. Charges of such violations "shall be submitted to the arbitration board for settlement." Article VI, § 4. When preferred, they must specify the article and section violated, and a copy of them, with notice of hearing before the board, shall be served on the "party charged." Artical VI, § 2.

On these provisions reliance is placed for regularity in all·the proceedings leading to expulsion. It appears that plaintiff was served with a copy of charges alleging violation of the wage schedule contained in the working agreement and notice of hearing before the board of arbitration. Plaintiff appeared before the board, witnesses were heard, and affidavits submitted. While there is difference in the testimony as to what took place, it becomes inconsequential in view of the action of the board. Whatever the action, it is claimed it was warranted under the authority vested in the board by the working agreement "with full power to act." To segregate this phrase and give to it a plenary meaning would be a violence to the context and a false interpretation of language. The pervading intent and spirit of the agreement, as expressed in its 47 sections, is a treaty of amity and adjustment of relations between employer and workman and a settlement of disputes by arbitration, and, when the words "with full power to act" are used, it is| meant with full power to act in the set-

153 N.Y.S.—32

tlement of disputes by arbitration. This board had no power to try charges or pronounce guilt upon them, and its doing so did not affect the rights of plaintiff in membership or relieve the employers' association from its obligation to accord to plaintiff a fair trial, as required by the constitution.

On the 22d of September, 1913, three days after the citation to plaintiff, the executive committee of the employers' association received from the secretary of the arbitration board a copy of complaint and affidavits, and a letter which, among other things, stated that the trade board had "unanimously voted that the firm of Grassi Brothers, Incorporated, be found guilty as charged, and, further, that the trade board recommended to the Employing Plasterers' Association the expulsion of Messrs. Grassi Brothers, Incorporated, from membership." On this finding and recommendation the executive committee acted with approval, and in turn recommended to the association that on the finding of the trade board the plaintiff be expelled. Thus, without charges or trial, the plaintiff was expelled, and the association of which it was a member, and which should have protected it in its rights, acquiesced in the finding and recommendation of a body without authority to make them.

It is of importance to note that one of the delegates who composed the trade board and who voted for guilt and recommendation of expulsion was present and participated in the proceedings of the executive committee that acted upon the recommendation. Even if there had been a trial, the presence and participation of this man, who had formally prejudged the case, was of itself sufficient denial of a fair trial. On the whole case it is clear to me that plaintiff did not have a trial in accordance with the constitution of the association nor with the law of the land (Wilcox v. Royal Arcanum, 210 N. Y. 370, 104 N. E. 624, 52 L. R. A. [N. S.] 806); that it was illegally expelled and should be restored to all its rights of membership.

[5] The trial having been conducted on the express understanding that testimony relating to damages alleged to have been sustained because of the expulsion be withheld for reference, in the event of it being adjudged that the expulsion was illegal, provision should be made in the interlocutory decree for such reference. Consequential to plaintiff's restoration to membership, it should be adjudged that it be entitled to all rights and privileges accruing to its membership under the working agreement upon compliance with its conditions.

There is not sufficient testimony to warrant the granting of injunctive relief against defendants Locals Nos. 30 and 60. The law will presume compliance with just obligations rather than refusal. That the locals have refused, or threaten to refuse, permission to their members to work for plaintiff under the working agreement is not proven. Until they do so, or threaten to do so, the court will not interfere. This denial of plaintiff's prayer is without prejudice to its application for relief in whatever form or at whatever time the circumstances may warrant.

Ordered accordingly.