## PRATT v. AMALGAMATED ASSOCIATION OF STREET AND ELECTRIC RAILWAY EMPLOYEES OF AMERICA et al.

No. 2949.   Decided May 8, 1917.   Rehearing denied October 4, 1917.   (167 Pac. 830.)

1. TRADE UNIONS—EXPULSION OF MEMBER—RIGHTS.   An expelled member of an unincorporated association of electric railway employees was only entitled to a hearing in accordance with the laws and rules of the association.   (Page 481.)

2. TRADE UNIONS—EXPULSION OF MEMBER—NECESSITY OF NOTICE.   The expulsion of a member of trade association without notice or opportunity to be heard is void.   (Page 481.)

3. TRADE UNIONS—EXPULSION OF MEMBER—REVIEW BY COURT.   Where plaintiff was not expelled from a trade association nor condemned without a hearing, but his appeal after being denied admission to one local order upon transfer from another was not taken up owing to member's honest opinion that he was not entitled to appeal, the court will not review and annul officers' acts relating to plaintiff.   (Page 482.)

4. TRADE UNIONS—ACTS OF OFFICERS—REVIEW BY COURT.   Courts are not authorized to review rulings of regular constituted officers of a trade association, relating to its internal affairs, and hence would not interpret constitutional provision, it being the officers' duty to

construe such provisions, and the fact that different officers arrived at different conclusions was immaterial.  (Page 484.)

5.  TRADE UNIONS—REINSTATEMENT OF EXPELLED MEMBER—ACTION AGAINST UNION.  Mandamus will not lie to compel reinstatement of an expelled member of a trade association where, owing to nonresidence of defendants, the decree could not be enforced.  (Page 485.)

Appeal from District Court, Third District; *Hon. F. C. Loofbourow*, Judge.

Mandamus by Clarence O. Pratt against the Amalgamated Association of Street and Electric Railway Employees of America and others.

Petition dismissed.  Petitioner appeals.

AFFIRMED.

*Marioneaux, Stott & Beck* and *Powers & Riter* for appellant.

*King, Nibley & Farnsworth* for respondents.

FRICK, C. J.

The plaintiff commenced this proceeding to compel the defendants as the ''officers, the executive board and the executive council of the Amalgamated Association of Street and Electric Railway Employees of America,'' a voluntary association, to reinstate him as a member of said association, and also as a member of one of the local divisions of said association, and to restore him to all of his rights in the association. The complaint, with attached exhibits, covers 40 pages of the printed abstract, and thus is too voluminous to be inserted in this opinion.  We can do no more, therefore, than to make a brief outline of the allegations contained in the pleadings.

In the complaint it is in substance alleged that the defendants named in the caption constituted the officers, etc., of the Amalgamated Association of Street and Electric Railway Employees of America, hereinafter called association; that the plaintiff is a member of said association, and that the same is a voluntary unincorporated association having its

principal office and place of business at Detroit, Mich.; that it had under its control subsidiary associations, or what are hereinafter called local divisions, in the various states of the United States, and in Canada; that the plaintiff formerly was a member of Local Division No. 6 of said association, located at Cleveland, Ohio, and that he thereafter, in due course, became a member at Detroit, Mich., and thereby continued his membership in good standing in said association; that he thereafter, in May, 1901, was elected a member of the general executive board of said association and was, at each general election thereafter held, re-elected to said position until 1911; that in September, 1911, desiring to become a member of Local Division No. 477 of Philadelphia, he in accordance with the constitution and laws of said association, applied for and received a withdrawal card which gave him the right to become a member of said local division, and he accordingly was accepted and became a member thereof, and thereafter, continued to be, and now is, a member in good standing of said Local Division No. 477; that in order to permit the plaintiff to be admitted into said local division and to make him eligible to hold the position of business agent, the by-laws of said local division were suspended, and that a protest was filed against plaintiff's election as a member of said division and to the position aforesaid by the secretary-treasurer of said Local Division No. 477; that in December, 1911, the president of said association attempted to suspend said Local Division No. 477; that without a hearing on said protest the executive board of said association ruled that plaintiff was not eligible to hold said position of business agent, and held that the by-laws aforesaid should not have been suspended, and should not be, except in extreme cases; that plaintiff complied with the ruling of said executive board and withdrew from said position of business agent, but both the plaintiff and said Local Division No. 477 gave notice that they appealed from the ruling of said executive board, stating the grounds for their appeal; that the next biennial general convention of said association was held at Salt Lake City, Utah, from September 8, to September 17, inclusive, 1913, at which

meeting the defendants concealed and suppressed said notice of appeal and thus arbitrarily prevented said convention from considering the same, and said defendants refused to give plaintiff and the members of said Local Division No. 477 a hearing on said appeal; that no charges had ever been preferred against the plaintiff, and that he demanded that charges be preferred against him, and that he be given a hearing upon the decision of said executive board whereby he was declared to be ineligible to membership in said Local Division No. 477, and to the position aforesaid, and that said decision be rescinded; that under the laws and the constitution of said association plaintiff, if in good standing, is entitled to sick, funeral, and other benefits of the aggregate value of $1,000 from the funds of said association; that the plaintiff has been arbitrarily and illegally deprived of the right of receiving said benefits, and that he has been denied a hearing upon all questions involved on said appeal. Other similar grievances are alleged in the complaint, but nothing could be gained by going into further detail regarding those allegations.

Upon substantially the foregoing allegations the district court of Salt Lake County issued an alternative writ of mandate requiring the defendants to comply with the matters stated in the writ or to show cause by a time fixed why they did not do so. Motions to quash the writ and demurrers were filed thereto, all of which were overruled, and the defendants filed their joint answer to the complaint. It must suffice to say that while the defendants admitted many of the allegations of the complaint, yet they denied all wrongs attributed to them and all the rights claimed by the plaintiff, and affirmatively averred that the plaintiff was without right to make the claims set forth in the complaint; that all the matters set forth in the complaint had been adjudicated in a former proceeding in the courts of Pennsylvania; that another action involving the same questions presented in this proceeding was now pending in the state courts of Pennsylvania; that the district court was without jurisdiction; that the plaintiff unlawfully, and without being qualified to become such member, attempted to become a member of said Local Division No. 477,

and that by reason of his wrongful acts he "became excommunicated from and severed all relations with said association."

While, as before stated, the case originated as a mandamus proceeding and an alternative writ was duly issued, to which the defendants responded, yet the case was ultimately tried as an equitable proceeding. The plaintiff, in support of the allegations of his complaint, produced a large mass of evidence, documentary and otherwise, all of which he presents to this court in his bill of exceptions, consisting of between 700 and 800 closely typewritten pages. It is not possible to state or to review the evidence without extending this opinion beyond all reasonable limits. It is, however, not necessary to do so for the purposes of this decision. When plaintiff rested his case the defendants moved the court for a nonsuit and dismissal of the complaint. The court granted the motion and entered judgment dismissing the complaint, from which judgment plaintiff prosecutes this appeal. While plaintiff's counsel originally assigned a large number of errors, yet, in their printed brief, they have only argued the general proposition that the court erred in dismissing the complaint and in not requiring the defendants, as the officers of said association, to reinstate the plaintiff as a member thereof and as a member of Local Division No. 477. The trial court, in disposing of the case, filed a written opinion, which is made a part of the record. In view that the trial court, in that opinion, fully reflects the gist of the evidence and covers what we deem the real questions in the case, we take the liberty of inserting that opinion in full. It reads:

"Throughout the trial of this case the court has considered very carefully the nature of the cause of action set out in the amended complaint upon which the case is being tried, and it seems to the court that the underlying principle of the complaint is this: That the plaintiff claims that the international officers did not have power to do certain things, that is, to suspend the Philadelphia Local No. 477, and to pass upon the eligibility of Mr. Pratt to hold office in that local and his qualifications to be a member of that local. If the interna-

tional officers had power in these matters and exercised it in good faith, I take it the plaintiff has no right to complain. The plaintiff is bound, if he is a member of this association, by all the by-laws and by the constitution of the amalgamated association; and if the board, or if the international officers acted not in good faith, he would have a right to complain of such arbitrary action on their part.

"Now, in the first place, the court is of the opinion that the international board did have power, expressly given it in conjunction with the international president, to rule upon all questions of law, the manner of construction of the laws of the association, and did have power to suspend locals expressly given it by this constitution and these by-laws.

"Then, in the second place, the court comes to the question of whether or not this power was exercised arbitrarily and not in good faith. The court finds no reason to conclude, from the evidence of the plaintiff and the plaintiff's case, that the officers did not act in good faith. The power given these international officers is quite arbitrary. I have no doubt it is necessary, to the successful maintenance of an organization of this sort, that the international officers should have very great power, and, certainly, very great power is conferred upon the international officers by the constitution of this association; but there is nothing in the evidence in this case that indicates that the power was exercised not in good faith.

"And, further, the court is of the opinion that when this withdrawal card was given Mr. Pratt from the Detroit office that he then ceased to be a member of the amalgamated association. The card itself so states, and I think that is the only conclusion that can be drawn from section 125 of the constitution. If he desires to use that card in going into some local of the amalgamated association, it takes the place of an application; and upon filing that withdrawal card with a local division, he thereby makes application for membership, as I understand these by-laws and this constitution. Then he must comply with all the requirements of the constitution and by-laws before he is entitled to membership. That is to say, he must be working at the occupation, and if the withdrawal

card comes from the Detroit office, the fact of his application must be referred to the Detroit office.

"The court is of the opinion that Mr. Pratt never did become a member of the Philadelphia Local No. 477 of the amalgamated association. He made application for membership in that local by filing his withdrawal card there; and it is true that a card, or that several working cards were issued to him for successive months following the filing of his withdrawal card as an application for membership in that local. Those working cards would be prima facie evidence of membership in the association; but the fact of membership is contested and must be tried out upon all the facts and all the circumstances surrounding the transaction itself as disclosed by the evidence and in the light of the constitution and by-laws of the association; and they expressly provide that the applicant is not eligible for membership in the local unless he is working at the occupation and, when the withdrawal card comes from the Detroit office, until the application is referred to the Detroit office and a satisfactory reply is received from the Detroit office, whereupon the member's application may be accepted by the local division. The conclusion of the court is that Mr. Pratt is not a member and never was a member of the Philadelphia Local of this association, No. 477. It follows, from the views of the court herein expressed, that the international officers were entirely justified, under the constitution and by-laws of the amalgamated association, in ruling as they did that Mr. Pratt was not qualified for membership in the Local Division No. 477.

"The court is further of the opinion that the international officers had power to suspend that local and that they did suspend the local as set out in the pleadings, and that all those persons who were then members of that local ceased at that time to be members of the local. Local No. 477 was shortly afterwards reinstated upon the petition of a large number of the suspended members, and arrangements were made that these members who had been suspended could come back into membership, with their seniority rights restored. A way exists under the constitution and laws of the association

for all those members to protect whatever property rights they had in the association; and even if Mr. Pratt were a member of that Local No. 477 at the time of the suspension and could not join the reinstated local because of the fact that he was not working at the occupation, yet he still had an opportunity to return his card to the Detroit office and become a member at large, which would retain for him all his property rights. So that it seems to the court that there is and was at that time, and may be still, for aught the court knows, a plain and adequate method pointed out by these by-laws and constitution, for the plaintiff to protect every property right that was in any way jeopardized by reason of the suspension or the rulings of the international officers as to his membership or as to his right to hold office in Local No. 477. Under those circumstances, equity will not act; it is unnecessary that a court of equity should take any action in the matter, because the party himself has a plain way open for the protection of his rights.

"Under the circumstances disclosed by the evidence in this case I think the motion for a nonsuit should be granted and the plaintiff's petition dismissed."

Section 125 of the constitution referred to in the foregoing opinion reads as follows:

"When a member withdraws from this association by card, his membership ceases from the date of the issuance of such withdrawal card, and he is no longer entitled to any of the benefits of this association."

The withdrawal card issued to the plaintiff that is referred to by the court in the foregoing opinion reads as follows:

"This is to certify that Brother C. O. Pratt, whose signature appears in the margin hereof, was a member of the Amalgamated Association of Street and Electric Railway Employees of America, holding his membership in accordance with section 130 of the general constitution, and that he has paid all dues and demands and withdrawn in good standing from membership of the association on the date of this issuance of this card.

''Given under our hand and seal this 30th day of September, 1911.

''W. D. Mahon,

'' [Seal.]          .          International President.

''Signature of Bearer: C. O. Pratt. J. S.''

Section 130, to which reference is made in the foregoing card, reads as follows:

''Where divisions have disbanded and the membership has been referred to headquarters or where members hold their membership directly through the general association and the members desire withdrawal cards they shall apply directly to the general office for the same, and where members on withdrawal cards from the general office seek membership in L. D.'s they shall deposit their cards and the local secretary shall notify the International Office and upon receiving a satisfactory reply accept the member's withdrawal card and place him in good standing in the L. D.''

The real cause for all of plaintiff's grievances, and the differences existing between him and the defendants, as officers of the association, seems to date from the time that plaintiff was held not to be eligible to membership in Local Division No. 477, and hence not qualified to hold the position of business agent as stated in the complaint. That matter was, however, fully considered and decided by the proper officers of the association. The record shows that when plaintiff applied for membership in Local Division No. 477 he did so upon the withdrawal card before referred to and pursuant to the provisions of section 130, both of which we have set forth in full. The decision upon that question is made a part of the record, and it appears therefrom that the plaintiff had full opportunity to be heard, that he was heard, and that the questions presented for decision were fully considered and apparently were decided in full accordance with the laws of the association. After reviewing the case, a portion of the decision reads as follows:

''The decision of the general executive board is that under the laws of the association, member C. O. Pratt cannot

become a member of Division No. 477, under his present qualifications.

"The general executive board hereby directs that the withdrawal card be returned to member C. O. Pratt.

"The general executive board further rules that member C. O. Pratt may, at his own volition, return his card to the International Office and so retain his membership, and the International President is so instructed."

That decision seems to be the sum and substance of all of plaintiff's grievances. To set forth what occurred after that would require us to write a volume. It must suffice to say that the things that are complained of by the members of Local Division No. 477, and by the plaintiff, date from and arise out of that decision. While plaintiff insists that his rights have been trampled upon and ignored by reason that he was not permitted to present his appeal to the convention held at Salt Lake City, Utah, as before stated, yet what he asked the trial court to do, and what he demands at our hands, is, that the defendants be required to reinstate him as a member in good standing of Local Division No. 477 as well as a member in good standing of the association at large.

If it be true that plaintiff has been denied a hearing on appeal, and that his rights in that regard have been denied him, then the remedy he should invoke is that he be given the right to be heard on appeal in accordance with the rules and laws of the association of which he contends      1, 2 he is a member. All that a member is entitled to is a hearing in accordance with the laws and rules of the order or association of which he is a member. That is just what is decided by the cases cited by plaintiff's counsel, namely, *State* v. *Corgiat,* 50 Wash. 95, 96 Pac. 689; *Venezia* v. *Italian Mut. Ben. Soc., etc.,* 74 N. J. Law, 433, 65 Atl. 898; *Horgan* v. *Metropolitan Mut. Aid Ass'n,* 202 Mass. 524, 88 N. E. 890; *Grassi Bros.* v. *O'Rourke,* 89 Misc. Rep. 234, 153 N. Y. Supp. 493; *Wicks* v. *Monihan,* 130 N. Y. 232, 29 N. E. 139, 14 L. R. A. 243. The gist of all of those decisions is stated in the headnote of the case first cited in the following words:

"The expulsion of a member from a fraternal benefit association without notice or opportunity to be heard is void."

Plaintiff was not expelled from the association, nor was he condemned without a hearing. True, he asserts that he was denied a hearing on appeal. The reason assigned by the officers of the association, as we understand the record, however, is, that at least many of the delegates composing the convention to which the appeal was taken and the officers of the association insisted that the plaintiff was not entitled to an appeal, and for that reason his appeal was not considered or passed on. Now, it may be that the delegates to that convention and the officers of the association, including defendants, were all mistaken in their conclusion. There is, however, as the trial court stated, no evidence to justify a finding that the members did not act in good faith; nor is there sufficient evidence to justify a finding that any of the officers of the association, including all of the defendants, acted in bad faith. All we could do, therefore, would be to review the acts and proceedings of officers of the association and the delegates constituting the convention in refusing to hear and pass upon the plaintiff's appeal. Indeed, the whole record before us shows that what is desired at our hands is, that we review the acts and proceedings of the defendants while acting in their official capacity as officers of the association. As pointed out before, the evidence, documentary and otherwise, covers many hundreds of closely typewritten pages. The proceedings of the officers of the association are set forth at large. Now if, as in the cases cited above, the only question presented here was whether the plaintiff had been condemned without a hearing it would not have been necessary to present volumes of documentary evidence. All that would have been necessary to show was that plaintiff had been tried and condemned without notice and without being given an opportunity to be heard in his defense, or that he had been arbitrarily expelled. It is very clear, therefore, that what is asked of us is, that we review the acts and proceedings of the officers of the association in so far as those acts and proceedings affected the plaintiff, and that we annul those acts and proceedings. Courts may not interfere with the acts and proceedings of the officers of beneficial societies or associations to that extent.

What the courts are authorized to do, and what they will do, in that regard is to compel the officers of such associations, and the associations themselves, to condemn no member and not to forfeit his property or his property rights without a hearing or an opportunity to be heard in his defense according to the laws and rules of the association, and if there are no such rules the court will imply or create such. When such an opportunity is given, however, and the complaining member has been tried and condemned, or has been declared ineligible in accordance with the laws and rules of the order or association, and the acts of the officers of the association in that behalf are free from fraud or duress, courts may not interfere. True, plaintiff complains that no charges were ever preferred against him. Under the constitution, however, personal charges were not necessary to be preferred. The whole controversy arose out of his alleged ineligibility to become a member of, and to hold a certain office in, Local Division No. 477. That question, as we have pointed out, was fully heard and decided. All that follows is but a continuation of that controversy. By reference to that decision it will be seen that plaintiff's withdrawal card was ordered returned to him. He thus was given the right to deposit the card in accordance with the provisions of the constitution, and for aught that the record discloses he may still have that right. Plaintiff, however, insists that it was not a withdrawal card, as held by the officers who rendered the decision referred to, that was issued to him, but that it was a transfer card which entitled him to greater rights than a withdrawal card. The contention that the card was not a withdrawal card is based on a letter written by the president of the association to the plaintiff. That letter reads:

"Detroit, Mich., September 28, 1911.

"Mr. C. O. Pratt, 211 E. Tioga St., Philadelphia, Pa.— Dear Sir and Brother: Your communication of the 24th, addressed to R. L. Reeves, asking for transfer has been referred to me for answer. In compliance with your request, I hereby forward you your withdrawal card. Of course, you are familiar with our laws upon that subject. The constitu-

tion specifies in section 129 that withdrawal cards are used as a transfer. As you are aware, there is no other transfer issued but the withdrawal card. So I am forwarding the withdrawal card, as you request, which you can use as a transfer. * * * Hoping this will be satisfactory, and with best wishes, I remain, fraternally yours, W. D. Mahon, International President.''

The differences between plaintiff and the officers of the association, however, arose after that letter was written, and the decision which seems to have been the cause of all those differences was rendered nearly ninety days thereafter. In the decision, as we have seen, the card issued to plaintiff was held to be a withdrawal card and was treated as such. If it be assumed, therefore, that the president of the association considered it a transfer card, while the officers who had the power and whose duty it was to decide held it to be a withdrawal card, it was purely a difference of opinion between the president and the officers, and was thus a matter of construction. When all of the different sections of the constitution of the association relating to the rights of members to whom cards are issued are considered in pari materia, we are not prepared to say whether the president's or the officers' construction was the right one. In any event the officers not only possessed the right but it was their duty to construe and apply the provisions of the constitution to the best of their understanding and ability. The fact that different officers have arrived at different conclusions regarding certain provisions of the constitution is but natural. What interpretation we might now place upon the constitutional provision in question is of no importance, since we are not authorized to review the rulings of the regularly constituted officers of the association relating to the internal affairs of the association. We are of the opinion, therefore, that, so far as this card is concerned, the president's letter has no controlling influence.

Another important question is raised by the defendants, namely, the power or jurisdiction of this court to grant, and especially to enforce, the relief prayed for by the plaintiff. The record discloses that the defendants live and have

their homes in different states of the Union, and that at least one lives and has his home in Salt Lake City. Indeed, one or more of them, apparently, lives and has his home outside of the United States, namely, in Canada. The question therefore is raised, assuming that we should enter judgment granting the plaintiff's prayer, how could we enforce that judgment? The question certainly is pertinent, and it seems to us that we possess no such power. True, we might reach the resident member, but he alone could not comply with the judgment if one were entered. No one, we think, will be bold enough to assert that we could enforce our judgment outside of the state. If, therefore, we entered a judgment, and the defendants refused to convene and take the action required of them, by what means could we coerce them to comply with the judgment. Clearly we have no such power, and we know of no case or instance where such power was attempted to be enforced by a state court upon nonresidents of the particular state where the proceedings were had and the judgment was entered, and where the office or place of business of the defendants was outside of the state. The Supreme Court of the United States, having jurisdiction over the whole United States, in a proper case, might, perhaps, exercise such a power, but we are fully convinced that we have no such power.

The judgment of the district court is therefore affirmed, with costs.

McCARTY and CORFMAN, JJ., concur.