# CHARLESTON.

BURGER *et als.* v. McCARTHY *et als.*

Submitted September 30, 1919.   Decided October 7, 1919.

1. TRADE UNIONS—*Regulation of Brotherhood of Railroad Trainmen,
   Not Against Public Policy Not Reviewable by Courts.*

   A new regulation adopted by a General Grievance Committee,
   the constituted authority of the Brotherhood of Railroad Train-
   men to make regulations for the benefit of the members of said
   order, and to contract with the railroad on behalf of its mem-
   bers respecting those regulations and thereby to modify or de-
   stroy the right of preference to man trains making runs over
   certain sections of the railroad, acquired by some members of
   the order under a former regulation basing such preference on
   seniority of service, having been adopted in the manner pro-
   vided by the constitution and by-laws of the order, which is not
   in conflict with any rule of public policy, nor destructive of
   vested property rights, is not reviewable by the courts.  (p. 698).

2. SAME—*Right of Preference in Selection of Trainmen Subject
   to Modification by Subsequent Regulation by Brotherhood.*

   The right of preference in the selection of trainmen to man
   certain trains, acquired under an existing regulation by certain
   trainmen by virtue of their seniority, is not such a vested right
   as can not be denied or modified by a subsequent regulation or
   rule, adopted in the manner and by the authorities provided by
   the constitution and by-laws of the Brotherhood of Railroad
   Trainmen, of which complainants are members.  (p. 698).

Appeal from Circuit Court, Summers County.

Suit for injunction by W. F. Burger and others against T.
J. McCarthy and others.   Temporary injunction dissolved
on final hearing, and bill dismissed, and plaintiffs appeal.

*Affirmed.*

*E. C. Eagle,* for appellants.

*R. L. Blackwood* and *Geo. I. Neal,* for appellees.

WILLIAMS, JUDGE:

This suit was brought in the circuit court of Summers
county by W. F. Burger, E. T. Miles and R. F. Beasley, rail-
road conductors residing in the City of Hinton, West Virginia,
and employed by the Chesapeake & Ohio Railway Company,

against T. J. McCarthy and thirteen others, constituting the
General Grievance Committee of the Brotherhood of Rail-
road Trainmen of the said Chesapeake & Ohio Railway, for
the purpose of enjoining said General Grievance Committee
from putting into operation by agreement with said Rail-
way Company a new regulation affecting the right of pre-
ference acquired by plaintiffs under an old regulation re-
specting the same matter which had existed for a number of
years, thus taking away from them a preference in making
runs of passenger trains over certain districts or divisions
of the railroad, acquired by them under the former regula-
tion based on seniority of service.

The General Grievance Committee is the legislative body for
the organization known as the Brotherhood of Railroad
Trainmen, and its jurisdiction extends throughout the length
of the Chesapeake & Ohio Railway Company's lines. It is
made up from one member selected from the local committees
of the several Brotherhood lodges, located at different places
along the lines of the railroad, and is given power and auth-
ority by the constitution and by-laws of the Brotherhood to
make rules and regulations governing the members of the
Brotherhood, and to contract with the Railway Company in
respect thereto. A temporary injunction was awarded, but
on final hearing on the 14th of October, 1918, was dissolved,
and plaintiffs' bill dismissed, and from that decree plaintiffs
have taken this appeal.

The new rule modifying the old one, the operation of
which the bill seeks to enjoin, reads as follows:

"Paragraph 7.    In Passenger Service—All Passenger
trains that run over more than one freight district will be
manned by the oldest man from either district over which
the train runs; passenger trains that are confined to one
freight district, or run over a part or all of only one dis-
trict; shall be manned by men of that district; Branch lines
will be manned by men from the freight district with which
they intersect, except Piney Creek, Loup Creek, Hawks Nest,
Powelton, Paint Creek, Cabin Creek, Laurel Creek, Keeney's
Creek and South Side Branches, which will be manned from
New River and Kanawha Coal District crews, this to mean

all service performed on these branches.   The forgoing not to be operated west of Huntington.   Crews, Baggagemen, Brakemen and Flagmen will not be run from one passenger division to another; nor will they be run through terminals, where it is now being done.   This agreement provides for further vacancies.   Men now assigned to passenger runs not to be disturbed.''

The old rule on the same subject read as follows:

''Paragraph 7.  Trainmen who have served the longest on any division or district of the road, shall if other things are equal be given preference to runs on that division or district; except that men assigned to any division prior to July 1st, 1892, shall not be affected.''

The bill avers that plaintiffs have been in the railroad service from fifteen to eighteen years, having commenced as brakemen and worked up to the position of conductors, and have been members of the Brotherhood of Railroad Trainmen for thirteen years or more, and have thereby acquired property rights under the old rule or regulation, a right growing out of contract between themselves and their employer and, therefore, a sacred property right which the new rule, if put into operation, would destroy.   It is seriously contended in brief of counsel that this right of seniority is a thing of value, that it is one of the cherished rights of railroad men, gained only by long and arduous years of service.

It is established by the evidence that the new regulation was adopted in the manner and by the body of representatives provided for by the constitution and by-laws of the Brotherhood of Railroad Trainmen.   It was adopted by the General Grievance Committee at a meeting held in Cincinnati in September, 1917, by a vote of seven for, to six against it, after it had been submitted to, and approved by a vote of the members of a majority of the local lodges of which, at the time the rule was submitted to them, to-wit, in 1914, there were ten, seven of said lodges voting for and two of them against said rule, one lodge not voting.   Ten local lodges existed in 1917, and were represented on the General Grievance Committee which then consisted of thirteen members. After it had been adopted by the General Grievance Com-

mittee, Lodge No. 232, at Hinton, West Virginia, of which plaintiffs are members, and Lodge No. 389, at Richmond, Virginia, applied to the Board of Directors of the Grand Lodge, located at Cleveland, Ohio, for an appeal from the action of the General Grievance Committee, according to the provisions of the constitution and by-laws of the order. After hearing and considering the complaint of said local lodges, the Board of Directors denied the appeal, and notified the lodges of its action. The constitution and by-laws of the order also provides for a further appeal to the Grand Lodge of the order, but no further appeal was taken. It appears that the action of any subordinate committee or board in the organization, upon a matter over which it has jurisdiction, is conclusive upon all members of the Brotherhood until it is reversed by some higher authority within the order having appellate jurisdiction. Plaintiffs have not, therefore, pursued their remedies within the order to the full extent provided by its constitution and by-laws. They had a right to appeal from the Board of Directors to the Grand Lodge, but failed to do so. Plaintiffs should have exhausted the remedies provided in the constitution and by-laws of the Brotherhood before applying to a court for relief. *Robinson* v. *Brotherhood of Railroad Trainmen,* 80 W. Va. 567; and *Simpson* v. *Grand International Brotherhood of Railroad Engineers,* 98 S. E. 580, 83 W. Va. 355.

Presumably the action of the General Grievance Committee was for the general good of the Brotherhood, nothing appears to the contrary. We are, furthermore, of the opinion that the old rule, giving preference in making runs of trains according to seniority, did not create a property right in plaintiffs such as to justify the interference by a court of equity to prevent the operation of the rule.

We affirm the decree of the circuit court.

*Affirmed.*