(135 So. 327)

### SHAUP v. GRAND INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS et al.

6 Div. 811.

Supreme Court of Alabama.

June 11, 1931.

203

Drennen & Davis, of Birmingham, for appellant.

Cabaniss & Johnston, of Birmingham, for appellees.

GARDNER, J.

The bill was filed by appellant a locomotive engineer employed by the St. Louis-San Francisco Railway (hereinafter for convenience designated Frisco) against the Grand International Brotherhood of Locomotive Engineers, an unincorporated labor union of which he is a member, the local division of the union, two nonresident individuals as officers of the union, and a resident officer of the local division. Complainant complains that he has been deprived of certain alleged seniority rights by action of these respondents, and seeks redress in the courts for a violation thereof.

We pass by as unnecessary to a disposition of the cause on this appeal those assignments of demurrer taking the point of a want of necessary parties, or the character of relief sought is unenforceable by the court, which may be conceded present rather doubtful questions, and other matters of pleading which may be readily amended, as we prefer to rest our conclusion upon the question of prime importance presented by the bill's averments.

Complainant was a locomotive engineer on the line of the Frisco between Amory, Miss., and Birmingham, which with a thirteen miles branch line from Amory to Aberdeen, Miss., constituted what was known as the Birmingham subdivision and a separate seniority district. In the course of time, however, the branch line of thirteen miles was extended a distance of one hundred and thirty-three miles, running through Columbus, Miss., Aliceville and Demopolis, Ala., to Magnolia, at which latter point it is merged with the Muscle Shoals, Birmingham & Pensacola Road, which had been acquired by the Frisco system. It is averred that complainant had acquired seniority rights in the Birmingham subdivision, and was entitled thereby to certain preference in the work on said subdivision, and that, by reason of the above-noted extension, the work thereon was lessened. While the extension work was in progress,

the locomotive engines were manned and operated by engineers of said Birmingham subdivision, but, upon its completion, this extension from Amory to Magnolia began to be known as the Columbus subdivision. Thereupon the general committee of adjustment of the Grand International Brotherhood of Locomotive Engineers did rule and cause the Frisco Railway to offer and receive bids for seven engineers to run trains of said Columbus subdivision for the engineers of the entire Frisco system, and at the same time said railway, under the ruling of and caused by said general committee of adjustment, posted a bulletin for two engineers for said Columbus subdivision to be selected from engineers of the Birmingham subdivision by way of compensation for said Aberdeen branch. But, as we understand the bill, complainant insists his rights were invaded by reason of the fact that all of these positions were not offered first to the engineers on the Birmingham subdivision in accordance with their seniority of service, rather than only two of the places by way of compensation, and that the action of said adjustment committee was violative of section 35 of the standing rule of the brotherhood, which provides that, where one railroad or any portion thereof is absorbed, traffic diverted, consolidated, leased, or co-ordinated by another railroad, the engineers on the road, or any portion thereof, affected thereby, shall retain their rights in seniority on the roads absorbed, traffic diverted, or co-ordinated, and that, when it becomes necessary to readjust the service of the roads affected, the runs shall be manned by engineers in proportion as near as practicable to the mileage run on the territory of each road.

The engineers' schedule under which complainant worked was subject to change on thirty days' notice of either party, that is, the railroad or the engineers, and it is averred no such notice had been given, and therefore the schedule remained in effect. It is further alleged that under the rules of the brotherhood such laws and regulations as the general committee of adjustment shall make must not conflict with the laws of the order, and that the action of said general committee in the instant case conflicts with rule 35 above referred to. For redress of his grievance, complainant made application to the Grand Chief Engineer, but without avail; the Grand Chief Engineer ruling that the general adjustment committee was acting within its authority in causing the Frisco Railroad to advertise to the system of its lines for said seven engineers, and that in so doing the committee has violated no rule of the brotherhood, with particular reference to rule 35. Whether complainant had any right of appeal otherwise or made any further effort of redress within the brotherhood is not made to appear, but he charges that in his belief such ruling "is an erroneous construction

of said section and of his rights under said constitution, statutes and standing rules and engineers' schedule."

It is clear that complainant's case rests upon the theory that, because of the fact that formerly the Aberdeen branch of thirteen miles constituted a part of the Birmingham subdivision, the subsequent extension thereof for a distance of one hundred and thirty miles to Magnolia was without effect and that as to said Birmingham subdivision, it still must remain a part, and that the general adjustment committee was without authority to consider the extended line as creating a new subdivision, thereby establishing a different seniority district. But the authorities of the brotherhood have ruled otherwise, and have construed such action as violative of no rule or law of the order. Rule 35 is not set out in the bill, but we think a reading of so much thereof as appears therein in substance clearly demonstrates that there may well exist an honest difference of opinion as to the proper construction to be placed thereon as applicable to the facts here presented, and, indeed, interpretation of the authorities of the order appears to have much reasoning in its favor.

■ The facts alleged are incompatible with any charge of fraud or unfair or arbitrary ruling, and no such charge is made, but they show only a construction of the rules of the order upon a matter as to which an honest difference of opinion may well appear to exist. But the courts are indisposed to interfere with the internal management of such organizations, and do not grant relief under such circumstances. Grand International B. of L. Engineers v. Green, 210 Ala. 496, 98 So. 569, 572. As said by the West Virginia court in Simpson v. Grand International B. of L. Engineers, 83 W. Va. 355, 98 S. E. 580, 587: "The construction of the organic agreement, by-laws, rules and regulations of a benefit society or other unincorporated voluntary association belongs, not to the court, but to the board, council, or other tribunal provided for the purpose in the organization, if any. So long as the body upon which this power of interpretation has been conferred does not substitute legislation for interpretation, nor transgress the bounds of reason, common sense or fairness, nor contravene public policy or the laws of the land, in their conclusions and decisions, the courts cannot interfere with them." And in State ex rel. Smith v. Kanawha County, 78 W. Va. 168, 88 S. E. 662, 664, 20 A. L. R. 1030, the same court, speaking to this principle, used the following language: "The right of a voluntary association to interpret and administer its own rules and regulations is as sacred as is the right to make them, and there is no presumption against just and correct action or conduct on the part of its supervising or appellate authorities and tribunals. On the contrary, the presumption is in favor of it. In

connecting himself with the organization, a member subjects himself as fully and completely to the power of administration, within legal limits, as to the power of legislation or prescription. To say courts can make rules and regulations for such associations would be absurd and ridiculous. To say they may interpret and apply them, in view of the powers reserved to, and exercised by, the governing bodies of the association, would be as plainly subversive of contractual right."

Our court in Grand International B. of L. Engineers v. Green, supra, recognized the general rule as stated in the above-noted authorities, with the qualification, also generally recognized, that the "associations must act in good faith and must not violate the laws of the land or any inalienable right of their members." The cases of Pratt v. Amalgamated Ass'n, 50 Utah, 472, 167 P. 830, Long v. Baltimore & Ohio R. R. Co., 155 Md. 265, 141 A. 504, Burger v. McCarthy, 84 W. Va. 697, 100 S. E. 492, and William F. McMurray v. Brotherhood of Trainmen (U. S. Dist. Ct. W. Dist. of Penn. U. S.) 50 F.(2d) 968, are of interest in this connection and to like effect.

The facts stated in the bill only show an interpretation of the rules of the order by lawful authorities in good faith and in consonance with sound reasoning. The seniority rights of complainant were by virtue of agreement between the brotherhood and the railroad company, and it would seem subject to be vacated by mutual consent; either party having the right to withdraw therefrom on thirty days' notice. As said by the court in McMurray's Case, supra, this right is therefore "somewhat intangible," and it is quite clear such seniority right did not create such a vested property right as to justify the interference of a court of equity. Such was the holding in Burger v. McCarthy, supra, which we here approve, though for the purpose of this case it may properly be conceded that such rights are closely akin to one's "calling," and that an unlawful invasion of or interference therewith would constitute a wrong of which the courts would take cognizance. U. S. Fid. & Guar. Co. v. Millonas, 206 Ala. 147, 89 So. 732, 29 A. L. R. 520.

The bill is also defective in failing to disclose that complainant had first exhausted all remedies within the brotherhood before resorting to the courts. Simpson v. Grand International B. of L. Engineers, 83 W. Va. 355, 98 S. E. 580; Greenwood v. Building & Trades Council of Sacramento, 71 Cal. App. 159, 233 P. 823.

The chancellor sustained the demurrer and dismissed the bill, upon the theory that it presented no amendable defect. Wright v. Dunklin, 83 Ala. 317, 3 So. 597; 11 Ala. & So. Dig. § 247. We are in accord with that view, as complainant's case comes within the rule of noninterference by the courts in internal management of such voluntary associations.

The decree will be affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.