153 So. 434

## BELL v. WESTERN RY. OF ALABAMA.

### 3 Div. 69.

Supreme Court of Alabama.

Jan. 18, 1934.

Rehearing Denied March 22, 1934.

Walter S. Smith, of Birmingham, for appellant.

Steiner, Crum & Weil, of Montgomery, for appellee.

**KNIGHT, Justice.**

Action for damages by appellant, James T. Bell, against the appellee.

On the trial of the cause, owing to the adverse ruling of the court, in overruling plaintiff's demurrer to defendant's pleas in abatement, the plaintiff took a nonsuit, and prosecutes this appeal upon the record. Code, § 6431.

The complaint, as originally filed, contained seven counts; the first four being common counts, and the last three claiming damages for breach of a contract.

On the trial the plaintiff withdrew the common counts, and stood upon the three counts, which predicated his right of recovery upon a contract, which he alleged he had with the defendant, and which he alleges the defendant breached.

In each of counts 5, 6, and 7 the plaintiff alleged that on and prior to June 5, 1931, he was a member of the Association of Car Workers, a craft of railway employees, and is still a member of said association in good standing, and has been continuously since October 6, 1922; that on and prior to June 5, 1931, he was an employee of the defendant, and was an employee of defendant as a member of said association in the capacity of "triple test rack operator in the Montgomery yard of the defendant," which was "a job or position under the classification or roster 2 freight car repairers, and passenger car repairers," and that he had held said position continuously from July 13, 1922, to June 5, 1931; that the contract price fixed for plaintiff's services was 85 cents per hour; that defendant contracted with plaintiff in writing on October 6, 1922, as a member of the Association of Car Workers and as an employee of defendant, in reference to seniority rights as follows:

"The seniority of employees of each class covered by this agreement shall begin with the date of the last employment and be confined to the department and at point employed and under classification at which employed and will consist of separate rosters as follows:

1st — Car Inspectors
2nd — Freight car Repairers
3rd — Passenger car Repairers
4th — Pattern Makers
5th — Painters
6th — Upholsterers
7th — Engine Carpenters
8th — Planing Mill Men
9th — Welders.

"Men promoted from one seniority class to another may retain seniority in class promoted from."

In the fifth count of the complaint, the plaintiff alleged the defendant breached its contract in the following particulars: "That under a pretense of a reduction of forces the defendant transferred plaintiff's said position or job of triple test rack operator in the Montgomery yard of defendant railway company from the Car Workers to the Locomotives, and discharged plaintiff without cause, and gave plaintiff's said job or position to another employee of defendant railway company who had no seniority rights under said contract contrary to the provisions of said written contract that seniority must govern all positions under said written contract, although plaintiff has fully performed his part of said written contract, and is still ready, able and willing to perform the same. A copy of said contract is hereto attached, marked 'Exhibit A' and made a part of this count."

In count 6 the breach assigned is: "That although said contract was in force and effect the defendant discharged plaintiff from his said job or position as triple test rack operator in the Montgomery yard of defendant railway company and gave said position

330

to another employee of defendant railway company who held no seniority rights under said contract, although plaintiff had fully performed his part of said written contract, and is still ready, able and willing to perform the same."

In count 7 plaintiff makes the following assignment of the breach: "Plaintiff further avers that although said contract was in force and effect that the defendant discharged plaintiff from his said job or position as triple test rack operator in the Montgomery yard of defendant railway company without cause, and wrongfully gave said position to another employee of defendant railway company who had no seniority rights under said contract and plaintiff avers that said seniority rights so acquired by him with defendant railway company through long years of service were valuable to plaintiff, and he avers that he was dependent upon his said seniority rights and upon his said job or position with defendant railway company for a livelihood for himself and his family, and plaintiff avers that as a proximate consequence of the wrongful conduct of defendant as aforesaid that he lost his seniority rights with said railway company and lost his salary upon which he and his family were dependent for a livelihood, to plaintiff's damage as aforesaid; hence this suit."

To each count of the complaint the defendant filed pleas, termed by it pleas in abatement. In plea 2 the defendant set up the matters relied upon to abate the action more in detail, and with greater particularity of averment than was done in plea 1. However, no question is here raised as to the form of either plea, but only as to their legal sufficiency to abate the action.

It is averred in plea 2 that the plaintiff and defendant were "during the time complained of" engaged in interstate commerce, and that each was amenable to the provisions of the Federal Railway Labor Act (45 USCA §§ 151–163); that under the terms of said act, it was provided that disputes between employees and employer carriers, such as are involved in this suit, should be settled and determined as provided in said act, and defendant averred that, in pursuance of the terms of said act, a board of adjustment was created under and by virtue of a written agreement entered into on September 3, 1926, by and between the defendant and the Western Railway Association of Car Workers, of which plaintiff was a member, and that, in and by the terms of said agreement creating said board of ad-

justment, it was provided that all disputes growing out of grievances, or the interpretation or application of agreement between the carrier and its employees, such as are involved in this suit, should be handled by said board of adjustment, and in the manner provided by said Railway Labor Act: "And defendant avers that in pursuance of the terms of said Railway Labor Act and the said written agreement creating said Board of Adjustment, plaintiff should settle or undertake to settle his alleged dispute in accordance with the provisions thereof, and not in the manner and form as alleged in his complaint, and in this suit," etc.

To the defendant's pleas the plaintiff filed a number of grounds of demurrer.

Appellant takes the position that seniority rights which he held in defendant's service were vested rights, enforceable by the courts; that under section 13 of the Bill of Rights of the Constitution of Alabama the courts are and must remain open to him, and that for any injury done to him in his lands, goods, person, or reputation he shall have a remedy by due process of law; that the Railway Labor Act of Congress of 1926 did not confer jurisdiction upon the board of adjustment to hear and determine an action for breach of contracts between the employer railroad company and one of its employees, as is presented by the case at bar; that the plea fails to aver that the defendant made any request that the matters involved in the suit be referred to the board of adjustment for settlement; that the Federal Railway Labor Act of 1926 did not take away the right of an individual employee to resort to the courts; that said pleas seek to oust the jurisdiction of the state court of a justiciable cause of action litigable in the courts of the state; that to hold that the controversy must be decided or determined by the board of adjustment would in effect make one of the parties to the suit a final judge of its own cause; and, finally, to allow the board of adjustment to make its decision final in justiciable questions would be to clothe it with functions of sovereign power, which alone create tribunals, and authorize it to forfeit or confiscate property, a right forbidden to both Congress and the Legislature of this state.

We are free to admit there would be force in some of appellant's contentions with reference to the sufficiency of the pleas were it not for matters now to be stated.

Appellant in brief makes this broad statement: "The question is *squarely presented* by

this appeal as to whether the courts of this State or a Board of Adjustment, authorized and created by the Railway Labor Act, approved May 20, 1926, has jurisdiction over an action for breach of contract such as we have here." We think appellant, in the above excerpt, has too broadly stated the question to be determined in this case.

■ We may now, and here, state that it is everywhere recognized that parties sui juris may make a valid and binding contract touching a lawful subject-matter, so long as they do not violate any law of the land, or run counter to the public policy of the state or nation.

■ In the case before us, the appellant, as a member of the Western Railway Association of Car Workers, by and through said association, which was acting for appellant and his coemployees, entered into a written contract with the defendant railroad company, by the terms of which agreement a board of adjustment was created to hear and determine all disputes growing out of grievances, or the interpretation or application of agreements between the carrier and its employees, such as is involved in this suit, and to be handled in the manner as provided in the Railway Labor Act, approved May 20, 1926.

Let it be here said that the Railway Labor Act, approved May 20, 1926, does not undertake to take from, or to deprive, the plaintiff—employee—at all events, of the right to appeal to the proper law tribunals for redress of any wrongs done him, but, as we view the matter, under said act, and plaintiff's contract entered into under the plain mandate of said act, the complaining party is required to first present his grievances to said board of adjustment—for their consideration and action.

The present Railway Labor Act of Congress is quite different from the Transportation Act of 1920 (41 Stat. 456). The Transportation Act of 1920, it is true, undertook to devise a plan for the settlement of labor disputes, but the act in that regard proved unavailing, as the decisions of the Labor Board could not be enforced by legal process.

As pointed out in the case of Penn. R. Co. v. United States Railroad Labor Board, 261 U. S. 72, 43 S. Ct. 278, 281, 67 L. Ed. 536, the "only sanction of its decision is to be the force of public opinion invoked by the fairness of a full hearing, the intrinsic justice of the conclusion, strengthened by the official prestige of the Board, and the full publication of the violation of such decision by any party to the proceeding."

It was said to be the evident thought of Congress "that the economic interest of every member of the public in the undisturbed flow of interstate commerce and the acute inconvenience to which all must be subjected by an interruption caused by a serious and widespread labor dispute, fastens public attention closely on all the circumstances of the controversy and arouses public criticism of the side thought to be at fault." The court concluded that the Labor Board created by the Transportation Act of 1920 was "to act as a board of arbitration." It was expressly held in that case that the board could only give expression to its views of the moral obligation of each side, as members of society, to agree upon a basis for co-operation in the work of running the railroads in the public interest. Under the act, there was "no constraint upon the parties to do what the board decided they should do except the *moral constraint*, already mentioned, of publication of its decisions."

In view of the fact that the Transportation Act of 1920 had proven unavailing in accomplishing the purpose for which it was enacted, the act was repealed, and Congress, recognizing the necessity therefor, again addressed itself to the task of enacting some sort of law, which would more effectually protect interstate commerce from interruption by reason of differences between carriers and their employees, and at the same time provide a mode for the settlement of disputes between carriers and their employees, which would be obligatory upon both carrier and employees.

The provisions of the Railway Labor Act 1926 (section 3 [45 USCA § 153]) here pertinent reads:

"First. Creation of boards of adjustment; agreements and their provisions. Boards of adjustment shall be created by agreement between any carrier or group of carriers, or the carriers as a whole, and its or their employees.

"The agreement—(a) Shall be in writing; (b) Shall state the group or groups of employees covered by such adjustment board; (c) Shall provide that disputes between an employee or group of employees and a carrier, growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an

adjustment in this manner, that the dispute shall be referred to the designated adjustment board by the parties, or by either party, with a full statement of the facts and all supporting data bearing upon the dispute; (d) Shall provide that the parties may be heard either in person, by counsel, or by other representative, as they may respectively elect, and that adjustment boards shall hear and, if possible, decide promptly all disputes referred to them as provided in paragraph (c). Adjustment boards shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in the dispute; (e) Shall stipulate that decisions of adjustment boards shall be final and binding on both parties to the dispute; and it shall be the duty of both to abide by such decisions; * * * (i) Shall stipulate that a majority of the adjustment board members shall be competent to make an award, unless otherwise mutually agreed; * * * (k) Shall provide for the method of advising the employees and carrier or carriers of the decisions of the board.

"Second. Settlement of disputes by mutual and voluntary agreement. Nothing in this chapter shall be construed to prohibit an individual carrier and its employees from agreeing upon the settlement of disputes through such machinery of contract and adjustment as they may mutually establish."

The Supreme Court of the United States in the case of Texas & N. O. R. Co. v. Brotherhood of Railway & Steamship Clerks, 281 U. S. 548, 50 S. Ct. 427, 433, 74 L. Ed. 1034, speaking through Mr. Chief Justice Hughes, has this to say, in addressing itself to the constitutionality of the Railway Labor Act of 1926: "We entertain no doubt of the constitutional authority of Congress to enact the prohibition. The power to regulate commerce is the power to enact 'all appropriate legislation' for its 'protection or advancement' (The Daniel Ball, 10 Wall. 557, 564, 19 L. Ed. 999); to adopt measures 'to promote its growth and insure its safety' (County of Mobile v. Kimball, 102 U. S. 691, 696, 697, 26 L. Ed. 238); to 'foster, protect, control, and restrain' (Second Employers' Liability Cases, 223 U. S. 1, 47, 32 S. Ct. 169, 174, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44). Exercising this authority, Congress may facilitate the amicable settlements of disputes which threaten the service of the necessary agencies of interstate transportation. In shaping its legislation to this end, Congress was entitled to take cognizance of actual conditions and to address itself to practicable measures."

In the above-cited case the learned Chief Justice makes the following illuminating observation with respect to another provision of the act in question, which may well be applied to the provisions of the act in question: "The absence of penalty is not controlling. The creation of a legal right by language suitable to that end does not require for its effectiveness the imposition of statutory penalties. Many rights are enforced for which no statutory penalties are provided. In the case of the statute in question, there is an absence of penalty, in the sense of specially prescribed punishment, with respect to the arbitral awards and the prohibition of change in conditions pending the investigation and report of an emergency board, but in each instance a legal obligation is created and the statutory requirements are susceptible of enforcement by proceedings appropriate to each. * * * The right is created and the remedy exists. Marbury v. Madison, 1 Cranch, 137, 162, 163, 2 L. Ed. 60."

It only remains to be said that, while the Transportation Act of 1920 had only behind it, to effectuate its beneficent purposes, an awakened public sentiment, in the Railway Labor Act of 1926, Congress, while holding to the policy of providing for the amicable adjustment of labor disputes, and for voluntary submissions to arbitration as opposed to a system of compulsory arbitration, "buttressed this policy by creating certain definite legal obligations."

Pursuant to the plain and definite mandate of the Railway Labor Act, § 3 (45 USCA § 153), the defendant, appellee, entered into a written contract with the association of car workers, of which association the plaintiff was a member, by which it was stipulated and agreed that all disputes growing out of grievances, or the interpretation, or application of agreements between the carrier and its employees, should be handled by the board of adjustment, in the manner provided by said Railway Labor Act. In said agreement, a board of adjustment to which such disputes should be referred was created.

It thus appears that the agreement for arbitration of disputes between the carrier and its employees is buttressed by a mandatory provision of the federal statute.

The case of Brotherhood of Railroad Trainmen v. Barnhill, 214 Ala. 565, 108 So. 456, 459, 47 A. L. R. 270, was one involving a contract between a trade union and its members, and in that case this court held:

"The provisions of the Bill of Rights are that all courts shall be open and every per-

son for any injury done him in lands, goods, person, or reputation shall have a remedy by due process, and right and justice shall be administered without sale, denial, or delay. Const. § 13; Sparks v. McCreary, 156 Ala. 382, 47 So. 332, 22 L. R. A. (N. S.) 1224; Sloss-Sheffield S. & I. Co. v. Greek, 211 Ala. 95, 99 So. 791. It must be conceded that this provision of our Constitution does not negative the due effect of the general contract rights of the parties as members and officials of a mutual benefit brotherhood in the lawful exercise of authority in the due accumulation, protection, and distribution of the properties, to the legitimate ends to be obtained within the law of the brotherhood not contrary to the law of the state.

"The freedom of the right of lawful contract, the sustaining of agreements for inspection, arbitration, and award in matter of controversy, and submission to the constructions and estimates of architects and engineers as arbiters in the premises, have been familiar subjects of judicial decision, and held not to infringe upon the foregoing provisions of organic·law. George v. Roberts, 207 Ala. 191, 92 So. 1; Id., 186 Ala. 521, 65 So. 345; Shriner v. Craft, 166 Ala. 146, 158, 51 So. 844, 139 Am. St. Rep. 19, 28 L. R. A. (N. S.) 450; Abercrombie v. Vandiver, 126 Ala. 513, 28 So. 491; 6 Cyc. pp. 40–45."

In the case of Shaup v. Grand International Brotherhood of Locomotive Engineers et al., 223 Ala. 202, 135 So. 327, 329, which was a case involving the deprivation of the seniority rights of a member of a railroad brotherhood, it was observed: "The facts stated in the bill only show an interpretation of the rules of the order by lawful authorities in good faith and in consonance with sound reasoning. The seniority rights of complainant were by virtue of agreement between the brotherhood and the railroad company, and it would seem subject to be vacated by mutual consent; either party having the right to withdraw therefrom on thirty days' notice. As said by the court in McMurray's Case [(D. C.) 50 F.(2d) 968], supra, this right is therefore 'somewhat intangible,' and it is quite clear such seniority right did not create such a vested property right as to justify the interference of a court of equity. Such was the holding in Burger v. McCarthy [84 W. Va. 697, 100 S. E. 492], supra, which we here approve, though for the purpose of this case it may properly be conceded that such rights are closely akin to one's 'calling,' and that an unlawful invasion of or interference therewith would constitute a wrong of

which the courts would take cognizance. U. S. F. & G. Co. v. Millonas, 206 Ala. 147, 89 So. 732, 29 A. L. R. 520."

In the Shaup Case, supra, the bill was filed by the appellant, a locomotive engineer employed by the St. Louis-San Francisco Railway Company, against the Brotherhood of Locomotive Engineers, an unincorporated labor union, of which he was a member, and against the local division of the union, two officers of the union, and an officer of the local division. The complainant charged that he had been deprived of certain alleged seniority rights by action of these respondents, and he sought redress in the courts for a violation thereof. The court held, in that case, that the brotherhood had the right to interpret and administer its own rules and regutions; that such right was as sacred as is the right to make them, and there was no presumption against just and correct action or conduct on the part of its supervising or appellate authorities and tribunals, with the qualification that the association must act in *good faith* and must not violate the laws of the land or any inalienable right of their members. In support of its conclusion the following cases were cited: Simpson v. Grand International B. of L. E., 83 W. Va. 355, 98 S. E. 580, 587; State ex rel. Smith v. Kanawha, County Court, 78 W. Va. 168, 88 S. E. 662, 664, 20 A. L. R. 1030; Pratt v. Amalgamated Ass'n, 50 Utah, 472, 167 P. 830; Long v. B. & O. R. Co., 155 Md. 265, 141 A. 504; Burger v. McCarthy, 84 W. Va. 697, 100 S. E. 492; William F. McMurray v. Brotherhood of Railroad Trainmen (D. C., W. D. of Pa.) 50 F. (2d) 968; Grand International B. of L. E. v. Green, 210 Ala. 496, 98 So. 569.

The court held the bill filed in the Shaup Case, supra, defective in failing to disclose that complainant had first exhausted all remedies within the brotherhood before resorting to the courts.

We do not wish to be understood as holding that the cases of Brotherhood of Railroad Trainmen v. Barnhill, supra, and Shaup v. Grand International Brotherhood of Locomotive Engineers et al., supra, are "gray horse" cases with the one now before the court. They are not, but they furnish some analogy, and they are here cited for that purpose.

The case of Panhandle & S. F. R. Co. v. Curtis (Tex. Civ. App.) 245 S. W. 781, 783, arose prior to the enactment of the Railroad Labor Act of 1926, and, while the Transportation Act of 1920 was the only law touching the subject, as heretofore pointed out, the Railway Labor Act was enacted by Congress

to take the place of the Transportation Act because the latter had failed of purpose.

In the Panhandle Case, supra, the Court of Civil Appeals of Texas held that, in order to abate a suit, it should be alleged and proven that a request to refer the dispute to the adjustment board was made, and that the claim was within the jurisdiction of the boards named in the act. The opinion of the court then proceeds: "The appellee (employee) is not alleged to be a member of an organization of employees or that he is an employee, falling under the term 'unorganized.' If the latter, then the application must be by petition of not less than 100 unorganized employees. Where a party is to be deprived of his right to resort to the courts, it should appear as a general rule, we think, that he has by agreement waived that right or consented that other instrumentalities shall be used to determine it. The act in question does not seem to us to have taken his right away or intended to do so. *He might be held to have consented if he belonged to one of the groups named which had made application, as required by the statute, by his group or others, if his right is one that is* embraced in the disputes which may be determined by the Board." (Italics supplied.) It thus appears that the court in the Panhandle Case recognized the fact that, if the employee was a member of the group of employees, who had contracted to refer their disputes to the adjustment board for determination, this would be binding on the employee,

The cases of Malone v. Gardner (C. C. A.) 62 F.(2d) 15, and Parrish v. Chesapeake & O. R. Co. (C. C. A.) 62 F.(2d) 20, cited by appellant, went off on the question of jurisdiction. In each case the United States Circuit Court of Appeals held that the federal courts had not been given jurisdiction to try all actions arising out of agreements between carriers and their employees, or to require them to respect and maintain their agreements. The court dismissed each case for lack of jurisdiction.

The appellant insists that, if the defendant's pleas are held good, the effect of such a holding would be to close the doors of the courts to him, and thereby to deny to him a judicial determination of a justiciable cause of action.

In the case of Western Assurance Co. v. Hall & Brother, 112 Ala. 318, 20 So. 447, 448, this court had occasion to review the authorities and pronounce upon the provision of an insurance policy, which contained a stipulation for arbitration to ascertain the amount of loss.

In that case, as in the case at bar, the plaintiff demurred to the special pleas of the defendant setting up the arbitration provision of the contract of insurance, upon the ground that the stipulation for the ascertainment, estimate, and satisfactory proof of loss, by arbitration, in case of differences between the insurer and the insured, did not oust the jurisdiction of the court, and destroy the power to hear and determine the amount of such loss under said policy of insurance. This court, in passing upon the question presented, observed:

"The principle declared in these cases (Bozeman v. Gilbert, 1 Ala. 90; Meaher v. Cox, 37 Ala. 201, and Wright v. Evans, 53 Ala. 108) is that, when the agreement to arbitrate includes the whole subject-matter of difference, so that the right of the party to resort to the courts of his country for the determination of his suit or claim is absolutely and effectually waived, such an agreement is against *public policy*, and void. We adhere to that conclusion. The courts clearly distinguish between an agreement which refers to arbitration the extent or amount of damages to be recovered, but leaves the parties free to have the right to recover or liability of the other party determined by the courts, and those agreements which refer to arbitration the authority to determine the right of the one to recover or the liability of the other. The former are upheld and enforced, while the latter are declared to be against *public policy*, and not binding. The policy of the legislation of this state is to *encourage* the settlement of legal controversies by arbitration as far as can be done without contravening some principle of *public policy*. Tankersley v. Richardson, 2 Stew. 130; Tuskaloosa Bridge Co. v. Jemison, 33 Ala. 476; Code [1886], §§ 3221, 3222." (Italics supplied.)

Continuing, the court further said: "The case comes within the general rule long ago laid down by this court: 'Where the parties, in their contract, fix on a certain mode by which the amount to be paid shall be ascertained, as in the present case, the party that seeks an enforcement of the agreement must show that he has done everything on his part which could be done to carry it into effect. He cannot compel the payment of the amount claimed, unless he shall procure the kind of evidence required by the contract, or show that by time or accident he is unable to do so.' United States v. Robeson, 9 Pet. 319, 327 [9 L. Ed. 142]. See, also, Martins-

burg & Potomac R. Co. v. March, 114 U. S. 549, 5 S. Ct. 1035 [29 L. Ed. 255]."

The same conclusion was reached in the following cases: Carroll v. Fire Ins. Co., 72 Cal. 297, 13 P. 863; Hall v. Ins. Co., 57 Conn. 105, 17 A. 356; Campbell v. Am. Popular Life Ins. Co., 1 MacArthur (8 D. C.) 246, 29 Am. Rep. 591; Liverpool, London & Globe Ins. Co. v. Creighton, 51 Ga. 95; Wolff v. Ins. Co., 50 N. J. Law, 453, 14 A. 561; Pioneer Manuf'g Co. v. Assur. Co., 106 N. C. 28, 10 S. E. 1057; Hanover Fire Ins. Co. v. Lewis, 28 Fla. 209, 10 So. 297; May on Ins. § 495; Chippewa Lumber Co. v. Ins. Co., 80 Mich. 116, 44 N. W. 1055.

In the recent case of Maryland Casualty Co. v. Mayfield, 225 Ala. 449, 143 So. 465, 467, which was a case involving a similar provision of an insurance contract, this court speaking through Mr. Justice Brown, observed: "Taking the averments of defendant's pleas 1, 2, and 3 most strongly against the pleader, the stipulation in the contract providing for the arbitration included, not only the quantum of the plaintiff's damages, but her right of action—the cause of action— and so construed the stipulation is void as against *public policy.* Western Assurance Co. v. Hall & Brother, 112 Ala. 318, 20 So. 447."

Thus it will be seen that the courts, in holding that a stipulation in a contract for arbitration, which covers both quantum of damages and the cause of action itself, is void, have proceeded upon the theory that the contract in the last-named respect was against *public policy.*

From the foregoing, it would thus appear that the enforcement of such contracts has been withheld solely upon the ground that they contravened *public policy.* Otherwise they would be enforced, if made by competent parties, touching a lawful subject-matter.

The contract of appellant with the appellee, to submit the disputes between the carrier and its employees to arbitration by a board for that purpose, duly constituted by them, is not only *not opposed to any public policy* of the state, or of the national government, but is in accord with the declared policy of the United States government in the matter of the settlement of such disputes, is sanctioned by, and was executed in obedience to, the positive mandate of the federal act.

To hold that the contract in question created no binding obligation upon the appellant would be illogical, and an unjustifiable assault by the court upon an act of Congress— an act which was confessedly within the competence of Congress to enact—and would also be an unwarranted limitation upon the right of parties, sui juris, to make contracts. We cannot give judicial assent to such a proposition.

The contract brought forward in defendant's pleas, when executed, became a valid and binding obligation, governing the actions of carrier as well as its employees. Re-enforced as it was, and is, by a sound public policy, executed in accordance with the mandatory provision of a sound and salutary public statute, the constitutionality of which has been proclaimed by the highest judicial tribunal in the land, the contract is obligatory upon all parties to it, and we so hold.

And, if we may consult contemporaneous history, labor, organized in its own interest, as it most assuredly has the right to do, has been contending for many years for some law, legally obligatory, which would protect their rights by contract. To deny the validity and binding force of the contract now before the court, to settle disputes that may arise between employees and employer, by requiring that such disputes should first be heard and determined by a tribunal which they—employer and employee—have created, would, in our judgment, be a denial of the right of contract by parties sui juris.

Whether the defendant's pleas are to be treated as pleas in abatement or in bar, the result, so far as the present action is concerned, would be the same. If the averments of the pleas were true, the plaintiff could not have proceeded with his suit. In no event can plaintiff come into court until he has first submitted his grievance to the adjustment board, for its consideration and determination, as required by the contract.

It follows that the trial court properly overruled plaintiff's demurrers to defendant's pleas, and the judgment of the circuit court will be here affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.