### J. E. WYATT v. KANSAS CITY SOUTHERN RY. CO. et al.

### No. 5040.

Court of Civil Appeals of Texas. Texarkana.

Jan. 28, 1937.

H. H. Taylor, of Texarkana, for appellant.

King, Mahaffey & Wheeler, of Texarkana, for appellees.

HALL, Justice.

Appellant brought this suit in the district court of Bowie county against the Kansas City Southern Railway Company and the Texarkana & Fort Smith Railway Company, for compensation for overtime and for certain days he was not permitted to work during the period of time from April, 1933, until July, 1934. He alleged that appellees and the Kansas City Railway Carmen's Association of America, of which appellant was a member, entered into a written agreement effective August 1, 1928, with respect to rate of pay and working conditions of the members of said organization employed by appellees; that appellant's rate of pay was 74 cents per hour, for eight hours per day, seven days per week; and for overtime he was to receive time and one-half, or $1.11 per hour. He alleged that he worked ten hours per day for a certain number of days and received pay for only eight hours for each day; that he was wrongfully laid off for a number of days for which he claimed compensation. Appellant alleged further that appellees violated their contract of employment with him in the following particulars: "They changed the spread of hours he was required to work from twelve to ten hours; that defendants (appellees) required plaintiff (appellant) to work ten hours with only eight hours pay; that defendants (appellees) refused to pay plaintiff (appellant) for the overtime he worked; that defendants (appellees) refused to designate the

two hours in the spread of ten in one period that plaintiff (appellant) could take off; that plaintiff (appellant) being a seven-day assigned man, defendants (appellees) required him to lay off two or three days per week and denied him the right to work six days per week."

The appellees answered by general demurrer, numerous special exceptions, general denial, and alleged that appellant had been paid for all the time he actually worked for appellees; including all overtime turned in by him; that appellant turned in to appellees a card for each day's work and he was paid twice each month for all time shown on his cards. Appellees alleged further that appellant, being a member of the Kansas City Southern Carmen's Association of America, was bound by the terms of the agreement made and entered into by and between appellees and said Carmen's Association with respect to any grievances he might have against appellees; that it became appellant's duty in the event he was aggrieved at appellees relative to his working conditions or rate of pay to pursue the method stipulated in said working agreement. Appellees alleged further that appellant wholly failed to pursue the method of adjustment of his grievances embodied in his agreement and resorted in the first instance to the courts.

At the conclusion of appellant's testimony appellees made a motion for an instructed verdict which was granted and judgment was entered against appellant accordingly. From this judgment appellant prosecutes his appeal to this court.

Appellant contends, first, that the trial court erred in granting a peremptory instruction against him and holding that under his contract of employment it was mandatory on him to first exercise his remedy pointed out in his agreement with appellees with respect to any disagreement growing out of working conditions or rate of pay. It is undisputed that the Kansas City Southern Carmen's Association of which appellant was a member entered into an agreement with the Kansas City Southern Railway, the Texarkana & Fort Smith Railway, and the Arkansas & Western Railway Companies covering working conditions and rates of pay for its members employed by said railways which became effective August 1, 1928, and was in force when this suit was instituted in the lower court. This agreement was fully authorized by an act of Congress, known as the Railway Labor Act, and undoubtedly was made and entered into pursuant to said act. The purposes of the Railway Labor Act as amended (title 45, § 151 et seq., U. S.C.A.) are: "(3) to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this chapter; (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C.A. § 151a.

Section 152 of the same title, U.S.C.A.:

"First. It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

"Second. All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute."

This act has been held constitutional by the United States Supreme Court in the case of Texas & N. O. Rwy. Co. et al. v. Brotherhood of Railway & Steamship Clerks et al., 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034.

The pertinent parts of the agreement between appellant and appellees are:

"Rule 25, Discipline & Grievances:

"(e) Other Grievances: Should an employee subject to this agreement believe he has been unjustly dealt with, or any of the provisions of this agreement affecting his services have been violated, he may take the case to his foreman for adjustment.

"(f) Procedure for Appeals: Procedure for handling discipline or other grievance cases on appeal from the decision of the

first supervisor involved will be . as follows:

"(g) The employee involved will first submit his case in writing to his local committee and if approved by a majority of said committee, the case may then be appealed in writing to the next ranking supervisors or officers up to and including the Shop Superintendent, Master Mechanic or Master Car Builder, provided the first appeal is made within fifteen (15) days of the date upon which the original decision was rendered."

The appellant contends that it was optional with him whether he would pursue the method pointed out in his agreement with appellees relative to the settlement of any grievance which might arise with respect to his working conditions and rate of pay. In other words, the method set out in his agreement could be disregarded and suit brought in the first instance to redress any grievance he might have against appellees respecting working conditions and rates of pay. We cannot agree with this contention. The agreement of his union made with appellees was designed to effect an amicable settlement of such disputes as the one here involved by the method stipulated therein. The very purpose of the federal statutes under which the working agreement with appellees was drawn has for its object the settlement of labor disputes by the parties concerned, who have technical knowledge of said matters, without resort to the courts. The agreement provides a method of prompt settlement which is advantageous to both parties. It is true the appellant was not compelled to pursue the method pointed out in the agreement, and the record revealed he did not pursue this method. He could abandon his claim or grievance altogether, but should he desire any redress for same, in our opinion, it was incumbent on him to first pursue the method expressly pointed out in his agreement with appellees before he would have any standing in court. This is, as we view it, the clear meaning of both the Federal Labor Act and the working agreement entered into by the parties. To hold otherwise would strip both the statute and the agreement of the object intended to be accomplished by each and would strike hardest at the employee. We think we are fortified in this conclusion by the case of Bell v. Western Rwy. Co., 228 Ala. 328, 153 So. 434, 436, by the Supreme Court of Alabama, wherein it is said:

"In the case before us, the appellant, as a member of the Western Railway Association of Car Workers, by and through said association, which was acting for appellant and his coemployees, entered into a written contract with the defendant railroad company, by the terms of which agreement a board of adjustment was created to hear and determine all disputes growing out of grievances, or the interpretation or application of agreements between the carrier and its employees, such as is involved in this suit, and to be handled in the manner as provided in the Railway Labor Act, approved May 20, 1926.

"Let it be here said that the Railway Labor Act, approved May 20, 1926, does not undertake to take from, or to deprive, the plaintiff—employee—at all events, of the right to appeal to the proper law tribunals for redress of any wrongs done him, but, as we view the matter, under said act, and plaintiff's contract entered into under the plain mandate of said act, the complaining party is required to first present his grievances to said board of adjustment—for their consideration and action."

Also supporting our view of this matter is the case of Mallehan v. Texas & P. Ry. (Tex.Civ.App.) 87 S.W.(2d) 771, writ dismissed; Norfolk & Western Rwy. v. Harris, 260 Ky. 132, 84 S.W.(2d) 69, by the Court of Appeals of Kentucky, and authorities there cited.

The conclusions expressed above render a discussion of the other assignments unnecessary. They have been carefully considered and are respectfully overruled.

The judgment is affirmed.