## THOMPSON v. ST. LOUIS–SAN FRANCISCO RY. CO.

### Civ. A. No. 7154.

United States District Court
S. D. Alabama, N. D.
July 28, 1953.

Horace C. Wilkinson, Wilkinson & Skinner, Birmingham, Ala., for plaintiff.

Cabaniss & Johnston, Birmingham, Ala., for defendant.

LYNNE, Chief Judge.

This cause was submitted upon plaintiff's amended complaint and defendant's amended motion to dismiss.

Basing his claim on the so-called Washington Job Agreement of May, 1936 [1], plaintiff, alleging that as the result of coordination [2] between two carriers he has been deprived of employment [3], seeks to re-

1. See Railway Labor Executives' Association v. United States of America, 339 U. S. 142, 70 S.Ct. 530, 94 L.Ed. 721; United States of America v. Lowden, 308 U.S. 225, 60 S.Ct. 248, 84 L.Ed. 208.

2. Section 2(a) of the Washington Job Agreement provides: "The term 'coordination' as used herein means joint ac-

tion by two or more carriers whereby they unify, consolidate, merge or pool in whole or in part their separate railroad facilities or any of the operations or services previously performed by them through such separate facilities."

3. Section 7(c) of the Washington Job Agreement provides: "An employee

cover the coordination allowance [4] provided by the agreement.

Asserting that the primary jurisdiction of this action is in the National Railroad Adjustment Board, defendant seeks to have this action dismissed on the authority of Slocum v. Delaware L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 735.

It does not appear from the complaint that plaintiff's status as an employee has been wrongfully terminated. On the contrary, it is clear that under the provisions of the agreement copied in the margin [5], plaintiff still has the status and subsisting rights of an employee even though he has been temporarily deprived of his employ-

shall be regarded as deprived of his employment and entitled to a coordination allowance in the following cases:

"1. When the position which he holds on his home road is abolished as result of coordination and he is unable to obtain by the exercise of his seniority rights another position on his home road or a position in the coordinated operation, or

"2. When the position he holds on his home road is not abolished but he loses that position as a result of the exercise of seniority rights by an employee whose position is abolished as a result of said coordination, or by other employees, brought about as a proximate consequence of the coordination, and if he is unable by the exercise of his seniority rights to secure another position on his home road or a position in the coordinated operation."

4. Section 7(a) of the Washington Job Agreement provides: "Any employee of any of the carriers participating in a par-

ticular coordination who is deprived of employment as a result of said coordination shall be accorded an allowance (hereinafter termed a coordination allowance), based on length of service, which (except in the case of an employee with less than one year of service) shall be a monthly allowance equivalent in each instance to sixty per cent (60%) of the average monthly compensation of the employee in question during the last twelve months of his employment in which he earned compensation prior to the date he is first deprived of employment as a result of the coordination. This coordination allowance will be made to each eligible employee while unemployed by his home road or in the coordinated operation during a period beginning at the date he is first deprived of employment as a result of the coordination and extending in each instance for a length of time determined and limited by the following schedule:

| Length of Service | | | | Period of Payment |
| --- | --- | --- | --- | --- |
| 1 yr. | and less than | 2 yrs. | | 6 months |
| 2 yrs. | " " " | 3 " | | 12 " |
| 3 yrs. | " " " | 5 " | | 18 " |
| 5 yrs. | " " " | 10 " | | 36 " |
| 10 yrs. | " " " | 15 " | | 48 " |
| 15 yrs. and over | | | | 60 " |

In the case of an employee with less than one year of service, the total coordinantion allowance shall be a lump sum payment in an amount equivalent to sixty (60) days pay at the straight time daily rate of the last position held by him at the time he is deprived of employment as a result of the coordination."

5. Among the provisions indicating that plaintiff has subsisting rights are Sections 7(e), 7(g), 8 and 10(a) which provide:

"7(e) Each employee receiving a coordination allowance shall keep the employer informed of his address and the name and address of any other person by whom he may be regularly employed.

"7(g) An employee receiving a coordination allowance shall be subject to call to return to service after being notified

in accordance with the working agreement, and such employee may be required to return to the service of the employing carrier for other reasonably comparable employment for which he is physically and mentally qualified and which does not require a change in his place of residence, if his return does not infringe upon the employment rights of other employees under the working agreement.

"8. An employee affected by a particular coordination shall not be deprived of benefits attaching to his previous employment, such as free transportation, pensions, hospitalization, relief, etc., under the same conditions and so long as such benefits continue to be accorded to other employees on his home road, in active service or on furlough as the case may be, to the extent that such benefits can be so

902

ment as a result of coordination. Without considering all of plaintiff's possible rights under the agreement, it is entirely possible that plaintiff might yet be called to return to defendant's service with the protection accorded by the agreement during the period of his re-employment. Moreover it does not appear that plaintiff has resigned and is suing to recover the separation allowance provided in Section 9 [6] of the Washington Job Agreement.

 Since plaintiff still has the status of an employee, the jurisdiction of the Railroad Adjustment Board to adjust a dispute of the type here involved is exclusive within the rationale of Slocum v. Delaware L. & W. R. Co., supra. Under these circumstances, the holding in Moore v. Illinois Central Railroad Company, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, that a wrongfully discharged employee is not required by the Railway Labor Act, 45 U.S.C.A. § 151 et seq., to resort to the Railroad Adjustment Board as a prerequisite for a suit to wrongful discharge is inapposite. The court therefore is of the opinion that the primary jurisdiction of the controversy involved in the present litigation is vested in the Railroad Adjustment Board by the Railway Labor Act.

In the alternative it does not appear that plaintiff has exhausted the administrative remedies provided by Section 13 [7] of the Washington Job Agreement. In Trans-

---

maintained under present authority of law or corporate action or through future authorization which may be obtained.

"10(a) Any employee who is retained in the service of any carrier involved in a particular coordination (or who is later restored to service from the group of employees entitled to receive a coordination allowance) who is required to change the point of his employment as result of such coordination and is therefore required to move his place of residence, shall be reimbursed for all expenses of moving his household and other personal effects and for the traveling expenses of himself and members of his family, including living expenses for himself and his family and his own actual wage loss during the time necessary for such transfer, and for a reasonable time thereafter, (not to exceed two working days), used in securing a place of residence in his new location. The exact extent of the responsibility of the carrier under this provision and the ways and means of transportation shall be agreed upon in advance between the carrier responsible and the organization of the employee affected. No claim for expenses under this Section shall be allowed unless they are incurred within three years from the date of coordination and the claim must be submitted within ninety (90) days after the expenses are incurred."

**6.** Section 9 of the Washinton Job Agreement provides: "9. Any employee eligible to receive a coordination allowance under Section 7 hereof may, at his option at the time of coordination, resign and (in lieu of all other benefits and protections provided in this agreement) accept in a lump sum a separation allowance determined in accordance with the following schedule:

| Length of Service | Separation Allowance |
|---|---|
| 1 year & less than 2 years | 3 months' pay |
| 2 years " " 3 " | 6 " " |
| 3 " " " 5 " | 9 " " |
| 5 " " " 10 " | 12 " " |
| 10 " " " 15 " | 12 " " |
| 15 years and over | 12 " " |

"In the case of employees with less than one year's service, five days' pay, at the rate of the position last occupied, for each month in which they performed service will be paid as the lump sum.

"(a) Length of service shall be computed as provided in Section 7.

"(b) One month's pay shall be computed by multiplying by 30 the daily rate of pay received by the employee in the position last occupied prior to time of coordination."

**7.** Section 13 of the Washington Job Agreement provides: "13. In the event that any dispute or controversy arises (except as defined in Section 11) in connection with a particular coordination, including an interpretation, application or enforcement of any of the provisions of this agreement (or of the agreement en-

continental and Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. ——, it was held that, when required by the law of the state in which suit is brought, an employee must exhaust his administrative remedies under his employment contract before resorting to the courts.

In Bell v. Western Railway of Alabama, 1934, 228 Ala. 328, 153 So. 434, 438, Bell, an employee of the railroad brought an action for breach of contract. The contract upon which the suit was based provided that "all disputes growing out of grievances, or the interpretation, or application of agreements between the carrier and its employees, should be handled by the board of adjustment, in the manner provided by said Railway Labor Act." After referring to the cognate provisions of the Railway Labor Act of 1926, 44 Stat. 577, the Supreme Court of Alabama concluded that the parties to such contract were under an obligation to submit their disputes to arbitration by a Board of Adjustment before resorting to the courts.

The Court has found no case wherein the Alabama Supreme Court has had occasion to re-examine its holding since the 1934 amendment to the Railroad Labor Act, when Section 153(i) was amended by substituting the word "may" for "shall", but the court is of the opinion that the Alabama Court would hold that where contracting parties agree that either "may" resort to a designated tribunal for an adjustment of grievances, they must exhaust such remedy before resorting to the courts for redress. Compare, Reed v. St. Louis Southwestern R. Co., Mo.App., 1936, 95 S.W.2d 887, not published in state reports.

It is ordered, adjudged and decreed that this action be and it hereby is dismissed.

tered into between the carriers and the representatives of the employees relating to said coordination as contemplated by this agreement) which is not composed by the parties thereto within thirty days after same arises, it may be referred by either party for consideration and determination to a Committee which is hereby established, composed in the first instance of the signatories to this agreement. Each party to this agreement may name such persons from time to time as each party desires to serve on such Committee as its representatives in substitution for such original members. Should the Committee be unable to agree, it shall select a neutral referee and in the event it is unable to agree within 10 days upon the selection of said referee, then the members on either side may request the National Mediation Board to appoint a referee. The case shall again be considered by the Committee and the referee and the decision of the referee shall be final and conclusive. The salary and expenses of the referee shall be borne equally by the parties to the proceeding; all other expenses shall be paid by the party incurring them."

Section 11 of the Washington Job Agreement is not applicable.